**James Otis Law Group, LLC**
13321 North Outer Forty Road, Suite 300
St. Louis, Missouri 63017
(314) 562-0031

July 1, 2024

**Via CM/ECF**
Mr. Lyle W. Cayce
Clerk of Court
United States Court of Appeals for the Fifth Circuit
600 S. Maestri Place
Suite 115
New Orleans, LA 70130

**RE: *Hines and Hoft v. Stamos*, No. 23-30826, consolidated with *Hines and Hoft v. Aspen Institute*, No. 23-30916**

Dear Mr. Cayce,

On June 26, 2024, the Court requested letter briefs addressing the "impact, if any" on this case of "the Supreme Court's holding in *Murthy v. Missouri*, No. 23-411," (reported at 2024 WL 3165801). Dkt. 137. *Murthy* analyzed whether those plaintiffs (including Hines and Hoft) had made "a clear showing that [they are] likely to establish each element of standing" for purposes of receiving preliminary, prospective relief. 2024 WL 3165801, at *8 (quotations omitted). That issue has no direct bearing on the only question properly before this Court: whether Appellants can take advantage of arbitration agreements between Hines and Hoft and social media companies to avoid judicial review of their role in coercing and significantly encouraging those companies to censor Hines and Hoft.

## I. There is no appellate jurisdiction for a belated standing argument.

As a standing holding cabined by its procedural posture (a preliminary injunction), *Murthy* has little to no relevance to the only issue properly on appeal here: whether this is one of those "rare circumstances" where a non-party can "invoke an arbitration agreement … ." *Westmoreland v. Sadoux*, 299 F.3d 462, 465 (5th Cir. 2002). Appellants doubtless disagree; they said they would seek to file a supplemental brief on standing post-*Murthy*. Reply 8 n.1. But interlocutory appellate jurisdiction does not extend to standing any more than it does to personal jurisdiction. Br. Appellees 40–44. Both issues are pending in the district court, *see*

ROA.23-30916.1522–29, 4018, and this Court "may not reach beyond the certified order to address [issues] not yet ruled on by the district court," *CFPB v. All American Check Cashing, Inc.*, 33 F.4th 218, 220 n.2 (5th Cir. 2022) (en banc) (per curiam). An undecided, still-pending issue cannot have been "material to the lower court's … order," *Castellanos-Contreras v. Decatur Hotels, LLC*, 622 F.3d 393, 398 (5th Cir. 2010) (en banc) (quotations omitted) (discussing § 1292(b))—much less part of a district court's order. Thus, as a leading treatise said in discussing § 1292(b), "the court of appeals will not consider matters not yet ruled upon by the district court." 16 *Federal Practice and Procedure* § 3929 (3d ed. 2024 update).

Nor is there pendent appellate jurisdiction. *See* Br. Appellees 43, *but see* Reply Br. 7, 9. As *Mi Familia Vota v. Ogg*, 2024 WL 3059049 (5th Cir. June 20, 2024), recently held, an interlocutory standing decision "fit[] into none of" the categories of pendent appellate jurisdiction. *Id.* at *16. So too here: (1) equitable estoppel "will not necessarily dispose of the issue of standing;" (2) "addressing standing … will not further the purpose of" arbitration; (3) "standing [for Hines and Hoft to sue] is otherwise reviewable" after a final judgment; and (4) "standing and" arbitration "do not involve precisely the same facts and elements." *Id.* (quotations omitted). Moreover, the *Mi Familia* parties argued standing "on a basis not reached by the district court." *Id.* That rationale applies even more here, where the district court has not ruled on standing (or personal jurisdiction, for *Mi Familia* is just as applicable to that).

*Mi Familia* is consistent with decisions from other circuits, *see*, *e.g.*, *Moniz v. City of Ft. Lauderdale*, 145 F.3d 1278, 1281 n.3 (11th Cir. 1998); *Triad Associates, Inc. v. Robinson*, 10 F.3d 492, 496 n.2 (7th Cir. 1993), including in arbitration appeals involving equitable estoppel, *see*, *e.g.*, *O'Hanlon v. Uber Technologies, Inc.*, 990 F.3d 757, 765–66 (3d Cir. 2021), holding that an interlocutory appeal does not bring with it threshold issues like standing. *See also* Br. Appellees 43. *Mi Familia* also establishes that letting the district court address standing in the first instance doesn't denigrate this Court's role in policing jurisdiction. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 95 (1998). Indeed, "the standing analysis [must] be tailored to the type of relief sought. And in the context of an interlocutory under the FAA, that means we look not to the plaintiff and the relief sought in the underlying action, but to" the party seeking arbitration. *O'Hanlon*, 990 F.3d at 763 (discussing standing to appeal). A request to compel arbitration is "a compulsory counterclaim," *Dupuy-Busching General Agency, Inc. v. Ambassador Ins. Co.*, 524 F.2d 1275, 1277 (5th Cir. 1975), for which *Appellants* must have standing, *see*, *e.g.*, *Crabtree v.*

*Experian Information Services, Inc.*, 948 F.3d 872, 880 (7th Cir. 2020).[1] *See also Murthy*, 2024 WL 3165801, *9.

There is thus no Article III issue here. Indeed, the problem runs the other way. This Court possesses "only that power authorized by Constitution and statute." *Williams v. Taylor Seidenbach, Inc.*, 958 F.3d 341, 345 (5th Cir. 2020) (en banc) (alterations and quotations omitted). Jurisdiction under Section 16(a) is appellate. " 'The essential criterion of appellate jurisdiction ... is that it revises and corrects the proceedings in a cause already instituted.' " *Ortiz v. United States*, 585 U.S. 427, 436 (2018) (emphases added) (quoting *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 175 (1803)). But there is nothing to correct and revise as to standing and personal jurisdiction, issues on which the district court has not yet ruled. Thus, the principle of finality—that appellate courts "cannot proceed upon the matters not determined," *United States v. Girault*, 52 U.S. (11 How.) 22, 31 (1850)—applies equally here.

## II. *Murthy* does not undermine Hines's and Hoft's standing.

Even if standing were properly before this Court, *Murthy* does not undermine Hines or Hoft's standing here. *Contra* Reply 8 n.1. First, the issue in *Murthy* was "standing to seek an injunction … ." 2024 WL 3165801, at *7. And while Hines and Hoft seek injunctive relief here, they also seek money damages. *See* ROA.23-30916.1680. The latter is easier to establish because it is satisfied by allegations and evidence of past, historical injuries. *See Murthy*, 2024 WL 3165801, at *8. And, indeed, the evidence referenced in *Murthy* shows that Hines and Hoft have established standing with respect to the EIP. For example, the evidence in *Murthy* showed that EIP "alerted Twitter to an unidentified article from the Gateway Pundit." *Id.* at *11. It also said Hines made "the best showing of a connection between" past social-media restrictions and government censorship. *See id.* at *11–*13. So even if *Murthy* does not establish standing,, it does not *undermine* it. Indeed, the Court acknowledged that past pressure to coerce censorship "may be true." *Id.* at *16.

Second, *Murthy* and this case have different procedural postures. Because *Murthy* involved a preliminary injunction, the plaintiffs had to "make a clear showing that [they were] likely to establish each element of standing." 2024 WL 3165801, at *8 (quotations omitted). And because "the parties have taken discovery, the plaintiff [could not] rest on mere allegations, but must instead point to factual

[1] This analysis mirrors that of personal jurisdiction; being the party asking for relief, Appellants have consented to the district court's *in personam* jurisdiction for purposes of that ruling. *See* Br. Appellees 44–47.

evidence." *Id.* (quotations omitted). By contrast, Appellants launched a facial attack on standing, and so the allegations in the First Amended Complaint ("FAC") are treated as true. *See* ROA.23-30916.1512, 4031–33 (so noting). The FAC clearly alleges standing. For example, it "contains extensive, detailed factual allegations" about how Appellants "have and continue to target … Hines and her groups," ROA.23-30916.2870, and "Hoft's speech," ROA.23-30916.2871. The FAC is also replete with allegations of traceability—such Appellants' coercion of social media platforms, ROA.23-30916.2872, entanglement in social media companies' decisionmaking and with governmental officials, ROA.23-30916.2873, and effect on social media companies' decisions, ROA.23-30916.2873–74. *See also* ROA.23-30916.2874–77. To be sure, *Murthy* said in passing that certain facts found there "appear to be clearly erroneous." *Murthy*, 2024 WL 3165801, at *9 n.4. But that was not a holding, and more fundamentally, here there are no facts to be found—erroneously or otherwise—at this juncture. What Hines and Hoft alleged in the complaint must be taken as true. *See*, *e.g.*, *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

In short, *Murthy*'s holding that plaintiffs there did not establish standing for prospective relief says little about whether the allegations in the FAC, taken as true, survive a Rule 12(b)(1) motion. *See Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) ("[T]he legally relevant factors … will be different on summary judgment than on an earlier motion to dismiss" because the latter involves the complaint's allegations while the former requires evidence). *Murthy* is a fact-based decision, and standing at this stage turns of the sufficiency of the Complaint's allegations. For example, in rejecting the plaintiffs' self-censorship argument, the *Murthy* Court said "the plaintiffs have not shown that they are likely to face a risk of future censorship traceable to the *defendants*." 2024 WL 3165801, at *15. The allegations in the FAC, however, establish the requisite threat. *See* ROA.23-30916.2868–69 (opposition brief). And while the Court rejected the listener theory of standing in *Murthy*, it did so because the theory rested on listening to "countless other social-media users … ." 2024 WL 3165801, at *16. There was no "concrete, specific connection to the speaker." *Id.* But the FAC here does contain those connections. Hoft, for example, consumes the "speech of many speakers targeted for monitoring and censorship in the [EIP/VP] report." ROA.23-30916.1667. That is a narrower group, and it is far from the "boundless theory of standing" that concerned the Court in *Murthy*. 2024 WL 3165801, at *16 (quotations omitted).

In all events, *Murthy* underscores that this Court should not exercise its discretion to address standing. *Mi Familia*, 2024 WL 3059049, at *15. It "sits as a court of review, not of first view." *Sentry Ins. v. Morgan*, 101 F.4th 396, 399 (5th

Cir. 2024) (quotations omitted). *Murthy* is a fact-intensive opinion and does not address standing in this case; indeed, it does not disestablish standing in *Murthy*, but holds only that standing was not sufficiently established to support a preliminary injunction. Assessing *Murthy*'s impact on standing, if any, should be "addressed in the first instance by the district court." *United States ex rel. Bain v. Ga. Gulf Corp.*, 386 F.3d 648, 658 (5th Cir. 2004); *see also*, *e.g.*, *Sentry Ins.*, 101 F.4th at 399. That is doubly so because Appellants decided not to raise standing in their opening brief—despite their admission that under their theory of appellate jurisdiction, wrong though it is, they could have. *See* Reply Br. 8 n.1. That ensured this Court would not receive full briefing on standing—an issue whose "factual underpinnings are distinct" from the issues briefed here, *Griswold v. Coventry First LLC*, 762 F.3d 264, 270 (3d Cir. 2014)—and prejudiced Hines's and Hoft's ability to defend their standing. Indeed, since Hines's and Hoft's standing is not clearly questionable, Appellants' standing arguments are waived. *See*, *e.g.*, *United States v. Jackson*, 426 F.3d 301, 304 n.2 (5th Cir. 2005) ("Arguments raised for the first time in a reply brief ... are waived."); *United States v. Giovannetti*, 928 F.2d 225, 227 (7th Cir. 1991) (per curiam) ("The certainty of harmlessness does not appear with such clarity … that we should raise the issue on our own motion.").

## III. *Murthy* supports Hines's and Hoft's merits argument.

*Murthy* does have some relevance to the merits. First, *Murthy* left this Court's merits analysis in *Missouri II* untouched. *See* 2024 WL 3165801, at *6 n.3. That portion of the opinion is thus still the law of the circuit. *Data Mktg. P'ship, LP v. U.S. Dep't of Labor*, 45 F.4th 846, 856 n.2 (5th Cir. 2022). Second, the Court's analysis underscores that Hines's and Hoft's constitutional claims do not turn on the terms of service; they turn on whether the platforms restricted speech "in response to the actions of" Appellants and their governmental allies. 2024 WL 3165801, at *8. *Compare id.*, *with* Br. Appellees 25–26, 28–29. That same point undermines the claim that Appellants engaged in "substantially interdependent and concerted misconduct" with the social media companies. *Grigson v. Creative Artists Agency LLC*, 210 F.3d 524, 527 (5th Cir. 2000) (quotations and emphasis omitted); *see* Br. Appellees 33–34.

## CONCLUSION

In sum, the Court lacks appellate jurisdiction to address Plaintiffs' standing in this interlocutory appeal, Defendants have waived the issue, and *Murthy* casts no doubt on Plaintiffs' standing in any event.

Dated: July 1, 2024

Sincerely,

AMERICA FIRST LEGAL
Gene P. Hamilton
Reed D. Rubinstein
Nicholas R. Barry
Michael Ding
Juli Z. Haller
James K. Rogers
Andrew J. Block
611 Pennsylvania Ave SE #231
Washington, DC 20003
(202) 964-3721

JAMES OTIS LAW GROUP, LLC
*/s/ D. John Sauer*
D. John Sauer
Michael E. Talent
13321 N. Outer Forty Road,
Suite 300
St. Louis, MO 63017
(314) 562-0031
john.sauer@james-otis.com

cc: All counsel via CM/ECF filing

**CERTIFICATE OF SERVICE**

I hereby certify that, on July 1, 2024, I caused a true and correct copy of the foregoing to be filed by the Court's electronic filing system, to be served by operation of the Court's electronic filing system on counsel for all parties who have entered in the case.

*/s/ D. John Sauer*

**CERTIFICATION OF COMPLIANCE**

This document complies with the page limit set by the Court in its directive because it is five pages or less, excluding those portions pursuant to Federal Rule of Appellate Procedure 32(f).

This document complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 27(d)(1)(E) because it was prepared in a proportionally spaced typeface in Microsoft Word utilizing 14-point Times New Roman font.

*/s/ D. John Sauer*