# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 30, 2024

Lyle W. Cayce
Clerk

No. 23-30826

---

Jill Hines, *on behalf of herself & others similarly situated*; Jim Hoft, *on behalf of himself & others similarly situated*,

*Plaintiffs—Appellees,*

*versus*

Alex Stamos; Renee DiResta; Board of Trustees of the Leland Stanford Junior University; Leland Stanford Junior University; Kate Starbird, *in her official and individual capacities*; Graphika; Camille Francois; Atlantic Council; Graham Brookie,

*Defendants—Appellants,*

CONSOLIDATED WITH

---

No. 23-30916

---

Jill Hines, *on behalf of herself and others similarly situated*; Jim Hoft, *on behalf of himself and other similarly situated*,

*Plaintiffs—Appellees,*

*versus*

Aspen Institute,

*Defendant—Appellant*.

—————————————————

Appeals from the United States District Court
for the Western District of Louisiana
USDC Nos. 3:23-CV-571, 3:23-CV-571

—————————————————

Before Davis, Southwick, and Duncan, *Circuit Judges*.

W. Eugene Davis, *Circuit Judge*:

Plaintiffs-Appellees, Jill Hines and Jim Hoft, brought a putative class action lawsuit against Defendants-Appellants, a group of academic institutions, researchers, and nonprofit organizations, alleging that they collaborated with government officials to coerce social-media companies to monitor and censor disfavored speech on their platforms. In response, Defendants moved to dismiss the suit under Rules 12(b)(1), (2), (3), and (6) of the Federal Rules of Civil Procedure for lack of personal and subject-matter jurisdiction, improper venue, and failure to state a claim. Defendants concurrently moved to compel arbitration and stay proceedings or, alternatively, to transfer venue. The district court denied Defendants' motions to compel arbitration, but it has yet to rule on Defendants' motions to dismiss. Defendants appeal the denials of their motions to compel arbitration on this interlocutory appeal under 9 U.S.C. § 16(a). Because the district court erred by not resolving challenges to its jurisdiction before deciding arbitrability, we VACATE and REMAND for further proceedings.

## I.    BACKGROUND

Jill Hines and Jim Hoft are two social-media users who allege that they have experienced censorship on social-media platforms, such as Twitter and

No. 23-30826
c/w No. 23-30916

Facebook.[1]  Hines is the co-director of the advocacy organization "Health Freedom Louisiana," and founder of the grassroots organization "Reopen Louisiana."  She operates Facebook pages for both organizations and posts about the organizations' advocacy against the COVID-19 vaccine and mask mandates.  Hines alleges that her personal Facebook and her organizations' Facebook pages "are under constant threat of being completely deplatformed," and have previously been subject to censorship.  In particular, she asserts that in 2022 her personal account was "restricted for 90 days," and in April of 2023, "one of her Facebook posts regarding the health consequences of mask mandates, including the potential impact on female reproductive health, was censored on Facebook."

Hoft is the owner of the news website the Gateway Pundit, and operates its social-media accounts on Facebook, Twitter, and Instagram. Hoft alleges that the Gateway Pundit's "social-media accounts experience censorship on major social-media platforms," including "suspensions and deplatforming by Twitter, and censorship on Facebook."  He specifically alleges that the Gateway Pundit's accounts "have experienced and continue to experience extensive censorship," of speech related to "COVID-19 issues and election-security issues."

As a result of this alleged past and ongoing censorship, in May of 2023, Plaintiffs filed this putative class action lawsuit on behalf of themselves and "others similarly situated," against the following Defendants, which we refer to collectively as the "Stamos Defendants": (1) the Leland Stanford Junior University ("Stanford University"); the Board of Trustees of Stanford

---

[1] Although Facebook is now Meta Platforms and Twitter is now X, consistent with the district court opinion and the parties' briefs, this opinion continues to refer to the platforms as Facebook and Twitter.

No. 23-30826
c/w No. 23-30916

University; the Stanford Internet Observatory ("SIO"); SIO's director, Alex Stamos; and SIO's research director, Renée DiResta; (2) University of Washington's Center for an Informed Public ("CIP") director, Kate Starbird; (3) Graphika; and Graphika's chief innovation officer, Camille François; and (4) the Atlantic Council; and the Atlantic Council's Digital Forensic Research Lab ("DFRLab") senior director, Graham Brookie.

Plaintiffs' initial complaint asserted that in July of 2020, a coalition of researchers from SIO, CIP, Graphika, and DFRLab, formed the Election Integrity Partnership ("EIP"), an academic research project created to understand and address "misinformation and disinformation in the social media landscape." The complaint further alleged that "beginning in early 2021, the same four entities that launched the Election Integrity Partnership expanded the program to address COVID-19 'misinformation' on social media, which they called the 'Virality Project' or the 'VP' for short." The thrust of Plaintiffs' complaint was that the Stamos Defendants, through the EIP and VP, "collaborate[d] closely with federal, state, and local government officials to monitor and censor disfavored viewpoints on social media."

In August of 2023, the Stamos Defendants filed a motion to compel arbitration, dismiss the class claims, and stay all proceedings or, alternatively, to transfer venue. The Stamos Defendants concurrently filed a motion to dismiss under Rules 12(b)(1), (2), (3), and (6) for lack of personal and subject-matter jurisdiction (standing), improper venue, and failure to state a claim upon which relief may be granted.

Almost two months later, Plaintiffs filed an amended complaint—the operative complaint here—naming the Aspen Institute ("Aspen") as an additional defendant. The amended complaint reasserts the same allegations about the formation and purpose of the EIP and VP, and further alleges that both programs worked with government officials to "urge, pressure, and

No. 23-30826
c/w No. 23-30916

coerce social-media platforms to monitor and censor disfavored speakers and content."

The amended complaint states five causes of action: (Count 1) civil rights conspiracy under 42 U.S.C. § 1985(3); (Count 2) deprivation of rights under color of state law under 42 U.S.C. § 1983; (Count 3) violation of the First Amendment; (Count 4) tortious interference with contractual and business relationships; and (Count 5) breach of duty.  Plaintiffs' amended complaint seeks declaratory and injunctive relief, nominal, compensatory, and punitive damages, and attorneys' fees and costs.

The district court denied the Stamos Defendants' motion to compel arbitration based on the allegations in Plaintiffs' amended complaint.  The court acknowledged that neither party disputed that Twitter's and Facebook's terms of service agreements contained arbitration clauses and that Defendants were not signatories to the arbitration agreements entered into by Hines and Hoft.  The court then went on to conclude that Defendants, as non-signatories, could not use equitable estoppel to enforce the arbitration clauses.  The district court did not address the Stamos Defendants' pending motion to dismiss for lack of personal jurisdiction and standing, improper venue, and failure to state a claim.  The Stamos Defendants timely appealed.

Aspen, the newly-added Defendant, also moved to: (1) compel arbitration and stay all proceedings; and (2) dismiss the amended complaint for lack of personal and subject-matter jurisdiction, and improper venue. The district court denied Aspen's motion to compel arbitration "for the same reasons" provided in its order denying the Stamos Defendants' motion. Aspen timely appealed.  We consolidated the Stamos Defendants' and Aspen's interlocutory appeals.

No. 23-30826
c/w No. 23-30916

After briefing concluded in this appeal, the Supreme Court issued an opinion in a related case, *Murthy v. Missouri*.[2]  In *Murthy*, two states and a group of social-media users—including Plaintiffs in this case—sued numerous federal officials for allegedly coercing social-media platforms into censoring the plaintiffs' speech in violation of the First Amendment.[3]  The district court in *Murthy* issued a preliminary injunction, which this Court affirmed in part and reversed in part after determining that the plaintiffs had Article III standing to seek injunctive relief.[4]  The Supreme Court reversed on the grounds that none of the plaintiffs, including Hines and Hoft, had standing to seek injunctive relief.[5]  The parties provided this Court with supplemental briefing about what impact, if any, *Murthy* has on the present appeal.

## II.   DISCUSSION

On appeal, Defendants assert that the district court erred by resolving their motions to compel arbitration before resolving their pending motions to dismiss.  Relatedly, Defendants maintain that because the district court did not have personal jurisdiction over them, it lacked the power to rule on their motions to compel arbitration.  Alternatively, assuming the district court had jurisdiction, Defendants argue that the court abused its discretion by denying their motions to compel arbitration.  We agree with Defendants that the district court was required to resolve threshold jurisdictional disputes before addressing arbitrability.  Therefore, we both begin and end our discussion of

_____

[2] 144 S. Ct. 1972 (2024).

[3] *Id.* at 1982–84.

[4] *Missouri v. Biden*, 83 F.4th 350, 367–73 (5th Cir. 2023) (per curiam), *rev'd sub nom. Murthy*, 144 S. Ct. 1972.

[5] *Murthy*, 144 S. Ct. at 1985–94.

No. 23-30826
c/w No. 23-30916

this case with jurisdiction and do not reach the merits of the district court's orders denying Defendants' motions to compel arbitration.

As noted above, Defendants moved to dismiss for, *inter alia*, lack of personal jurisdiction and standing. Defendants' briefs on appeal focus on the district court's failure to address personal jurisdiction before arbitrability. The question of standing was not addressed until the parties' supplemental briefing following *Murthy*. Given the incomplete briefing on standing, we limit our review to Defendants' fully briefed personal jurisdiction challenge.

## A.   Appellate Jurisdiction

As an initial matter, we must assure ourselves of our jurisdiction over this interlocutory appeal.[6] Specifically, we must determine whether we have appellate jurisdiction to consider the issue of personal jurisdiction on this 9 U.S.C. § 16 interlocutory appeal. This Court always has "inherent jurisdiction to determine its own jurisdiction"[7] and to evaluate the district court's jurisdiction.[8] Defendants appeal from the district court's interlocutory orders denying their motions to compel arbitration pursuant to 9 U.S.C. §§ 3–4. This Court has appellate jurisdiction to review such denials under 9 U.S.C. § 16(a)(1)(C).

Section 16(a)(1)(C) authorizes a party to appeal "an order" "denying" a motion "to compel arbitration." Both parties acknowledge that § 16, like a certified interlocutory appeal under 28 U.S.C. § 1292(b), confers

---

[6] *See Mansfield, C. & L.M. Ry. Co. v. Swan*, 111 U.S. 379, 382 (1884) ("On every writ of error or appeal the first and fundamental question is that of jurisdiction, first, of this court, and then of the court from which the record comes.").

[7] *Scherbatskoy v. Halliburton Co.*, 125 F.3d 288, 290 (5th Cir. 1997); *see also Providence Behav. Health v. Grant Rd. Pub. Util. Dist.*, 902 F.3d 448, 455 (5th Cir. 2018) ("[T]his court has a duty to analyze its own jurisdiction de novo.").

[8] *Filer v. Donley*, 690 F.3d 643, 646–47 (5th Cir. 2012).

No. 23-30826
c/w No. 23-30916

appellate jurisdiction "to review the district court's entire 'order,'"[9] and any issue "fairly included" in that appealable order.[10] In the context of § 1292(b), we have explained that there is appellate jurisdiction to "address all issues material to the order" and such jurisdiction "is not limited to consideration of the 'controlling question,'" especially "when the issues outside the 'controlling question' provide grounds for reversal of the entire order."[11]

The question here is whether we have jurisdiction to consider the issue of personal jurisdiction given the limited scope of appellate jurisdiction for interlocutory appeals, particularly when the district court failed to rule on the issue below. Defendants argue that we have appellate jurisdiction to consider the unresolved personal jurisdiction challenge because it is an issue that is "fairly included" in the arbitration orders. Specifically, Defendants argue that considerations of personal jurisdiction must be included in the arbitration orders because absent personal jurisdiction the district court lacked the power to enter such orders. We agree.

A review of this Court's caselaw reveals that we have consistently concluded that there is appellate jurisdiction on interlocutory appeal to address (or remand for the district court to address) preliminary issues that the district court was required to resolve before issuing the appealable order

---

[9] *See Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 999 F.3d 257, 263 n.1 (5th Cir. 2021) (addressing the scope of appellate jurisdiction under § 16(a)(1)(E)).

[10] *See Yamaha Motor Corp., U.S.A. v. Calhoun*, 516 U.S. 199, 205 (1996) (explaining that under 28 U.S.C. § 1292(b), "the appellate court may address any issue fairly included within the certified order because it is the *order* that is appealable, and not the controlling question identified by the district court" (internal quotation marks and citation omitted)).

[11] *Castellanos-Contreras v. Decatur Hotels, LLC*, 622 F.3d 393, 398–99 (5th Cir. 2010) (en banc) (quoting *Ducre v. Exec. Officers of Halter Marine, Inc.*, 752 F.2d 976, 983 n.16 (5th Cir. 1985)).

No. 23-30826
c/w No. 23-30916

but failed to do so.  For example, in *Melder v. Allstate Corp.*,[12] we held that the issue of exhaustion of administrative remedies was "fairly included" in the certified order under § 1292(b) when it was raised in the district court, and the parties presented it in their appellate briefs.[13]   This Court has subsequently cited *Melder* for the general proposition that under § 1292(b), an issue is considered "fairly included [in the appealable order] when it was raised in the district court and the parties presented it in their appellate briefs."[14]

In *Daves v. Dallas County*,[15] we reviewed a preliminary injunction on interlocutory appeal that the district court issued "without first ruling on several motions that presented significant threshold questions, including abstention, judicial and legislative immunity, and standing."[16]   In acknowledging the district court's failure to address these issues, we emphasized that "[d]eciding if a case should be allowed to proceed in federal court at all is an issue that should not be postponed indefinitely."[17] Accordingly, we resolved some of the "potentially determinative issues[] the district court ha[d] yet to rule [on]," but ordered a limited remand for the district court to determine whether abstention was required.[18]

---

[12] 404 F.3d 328 (5th Cir. 2005).

[13] *Id.* at 330–31.

[14] *United States ex rel. Simoneaux v. E.I. duPont de Nemours & Co.*, 843 F.3d 1033, 1042 (5th Cir. 2016) (citing *Melder*, 404 F.3d at 330–31); *Castellanos-Contreras*, 622 F.3d at 398 (recognizing that "raising [an] argument in district court [is] deemed sufficient to render it 'fairly included' in the certified order" (citing *Melder*, 404 F.3d at 330–31)).

[15] 22 F.4th 522 (5th Cir. 2022) (en banc).

[16] *Id.* at 528.

[17] *Id.* at 531.

[18] *Id.* at 529.

No. 23-30826
c/w No. 23-30916

In *Louisiana Fair Housing Action Center, Inc. v. Azalea Garden Properties, L.L.C.*,[19] this Court determined it was "duty-bound to consider the threshold issue of jurisdiction" on interlocutory appeal even though "the district court's order did not explicitly analyze . . . standing."[20] This duty stemmed from the fact that "standing is an essential and unchanging part of the case-or-controversy requirement," and every "federal appellate court has a special obligation to satisfy itself not only of its own jurisdiction, but also that of the [district] court[]."[21] Additionally, we have considered challenges to subject-matter jurisdiction on § 16 interlocutory appeals and remanded for the district court to address such challenges in the first instance.[22]

Consistent with the above Fifth Circuit precedent, we conclude that we have jurisdiction to review the issue of personal jurisdiction because it is "fairly included" in the appealable arbitration orders. We find the above cases exercising appellate jurisdiction over challenges to a district court's subject-matter jurisdiction to be particularly instructive here. It is undisputed that for purposes of appellate jurisdiction there is no distinction between issues of subject-matter jurisdiction and nonwaived objections to

---

[19] 82 F.4th 345 (5th Cir. 2023).

[20] *Id.* at 349–50 & n.2.

[21] *Id.* at 350 n.2 (alterations in original) (internal quotation marks and citations omitted).

[22] *See Lewis v. Denison Indus. of Ca. Inc.*, No. 00-41107, 2001 WL 802644, at *2 (5th Cir. June 4, 2001) (unpublished) (refusing to address the merits of the district court's order denying a motion to compel arbitration and remanding the case because the district court "lack[ed] federal subject-matter jurisdiction on the present state of the record"); *Roman v. AutoNation Ford Gulf Freeway*, 669 F. App'x 281, 281 (5th Cir. 2016) (per curiam) (unpublished) (vacating a district court's order denying a motion to compel arbitration because it was "not clear that the district court had subject matter jurisdiction" and remanding "to the district court to determine whether subject matter jurisdiction exists").

No. 23-30826
c/w No. 23-30916

personal jurisdiction. This is because both subject-matter and personal jurisdiction are "essential element[s] of the jurisdiction of a district . . . court, without which the court is powerless to proceed to an adjudication."[23]

Here, as in *Melder*, Defendants raised their challenge to personal jurisdiction in the district court, and both parties extensively brief the issue on appeal.[24] Moreover, as discussed below, the "significant threshold question[]"[25] of personal jurisdiction—and the district court's failure to answer it—is material to the appealable orders because the district court had to ensure it had personal jurisdiction over Defendants before addressing arbitrability.[26] Put differently, this Court cannot affirm the district court's arbitrability orders if the district court lacked personal jurisdiction to issue those orders in the first place. Instead, the district court's failure to address threshold challenges to its jurisdiction provide "grounds for reversal"[27] of its arbitration orders. Accordingly, given that personal jurisdiction is a

---

[23] *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999) (alteration in original) (internal quotation marks and citation omitted).

[24] *See Melder*, 404 F.3d at 330–31.

[25] *Daves*, 22 F.4th at 528.

[26] *See, e.g.*, *PaineWebber, Inc. v. Chase Manhattan Priv. Bank (Switz.)*, 260 F.3d 453, 464 (5th Cir. 2001) ("As the district court lacked jurisdiction to enter its order compelling . . . arbitrat[ion] . . . , we vacate that order and remand with instructions to dismiss this case for lack of personal jurisdiction . . . ."); *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp., Ltd.*, 818 F.3d 193, 212 (5th Cir. 2016) ("When a party agrees to arbitrate in a particular state, via explicit or implicit consent, the district courts of the agreed-upon state may exercise personal jurisdiction over the parties for the limited purpose of compelling arbitration." (internal quotation marks and citation omitted)); *InterGen N.V. v. Grina*, 344 F.3d 134, 142 (1st Cir. 2003) ("We therefore hold that so long as the parties are bound to arbitrate and the district court has personal jurisdiction over them, the court is under an unflagging, nondiscretionary duty to grant a timely motion to compel arbitration . . . ."); *Robert D. Mabe, Inc. v. OptumRX*, 43 F.4th 307, 328 (3d Cir. 2022) (questioning how a court without jurisdiction could enter a stay under § 3 or compel arbitration under § 4).

[27] *Castellanos-Contreras*, 622 F.3d at 399 (citation omitted).

No. 23-30826
c/w No. 23-30916

necessary predicate to the district court's issuing the appealable arbitration orders, and thus "fairly included" in such orders, we have appellate jurisdiction to address it on this interlocutory appeal.

Plaintiffs counter that we lack appellate jurisdiction to address the issue of personal jurisdiction because § 16 does not "purport[] to authorize interlocutory appeals of personal-jurisdiction questions—let alone those that the district court has not yet decided." According to Plaintiffs, to address personal jurisdiction on this interlocutory appeal would be inconsistent with this Court's statement in *CFPB v. All American Check Cashing, Inc.*,[28] that the "scope of our interlocutory review is circumscribed," with one such limitation being that we "may not reach beyond the certified order to address . . . those [issues] not yet ruled on by the district court."[29]

However, exercising appellate jurisdiction over the issue of personal jurisdiction here is not inconsistent with the above language from *All American Check Cashing.* As explained above, addressing the district court's failure to ensure it had personal jurisdiction before ruling on arbitrability is not "reach[ing] beyond" the appealable arbitrability orders, but is instead addressing a necessary prerequisite to the district court's entering such orders. Whether the district court had jurisdiction to enter the immediately appealable orders is a question that "underlie[s]" the arbitration orders given that it is an issue "necessary to dispose of the order[s] being appealed."[30] Furthermore, *All American Check Cashing* is distinguishable from the present

---

[28] 33 F.4th 218 (5th Cir. 2022) (en banc) (per curiam).

[29] *Id.* at 220 n.2 (first alteration in original) (quoting 19 James W. Moore et al., Moore's Federal Practice § 203.32[3][a], at 203–132 to 203–133 (Matthew Bender 3d ed. 2021)).

[30] *Id.* (citation omitted).

No. 23-30826
c/w No. 23-30916

appeal because it did not involve an unresolved jurisdictional challenge to an order on interlocutory appeal.[31]

Plaintiffs alternatively assert that there is no "pendent appellate jurisdiction" for us to decide the issue of personal jurisdiction. Plaintiffs rely on decisions from this Court and the Third Circuit involving interlocutory appeals in which both courts declined to exercise pendent appellate jurisdiction over the district court's conclusion that the plaintiffs had standing to bring the underlying claims.[32]

The doctrine of pendent appellate jurisdiction applies "in rare and unique circumstances where a final appealable order is 'inextricably intertwined' with an unappealable order or where review of the unappealable order is necessary to ensure meaningful review of the appealable order."[33] Here, unlike the cases cited by Plaintiffs, the district court never addressed

---

[31] In *All American Check Cashing*, this Court held that an intervening Supreme Court decision decided "the pure question of law raised by . . . th[e] interlocutory appeal." *Id.* at 220. To the extent our appellate jurisdiction over additional issues was addressed, two concurring opinions asserted that we had appellate jurisdiction to consider an additional constitutional challenge to the Consumer Financial Protection Bureau ("CFPB") that was not resolved by the intervening Supreme Court decision because the challenge was argued below and ruled on by the district court. *Id.* at 245 (Oldham, J., concurring in the judgment); *id.* at 221–22 & n.2 (Jones, J., concurring).

[32] *See Mi Familia Vota v. Ogg*, 105 F.4th 313, 333–34 (5th Cir. 2024) (declining to exercise pendent appellate jurisdiction to review the district court's determination that the plaintiffs had standing on an interlocutory appeal from the denial of a motion to dismiss based on sovereign immunity); *O'Hanlon v. Uber Technologies, Inc.*, 990 F.3d 757, 765–66 (3d Cir. 2021) (holding that the court had "no independent duty to also review . . . [the district court's] ruling that Plaintiffs have standing to sue" and that there was no pendent appellate jurisdiction to review the district court's standing decision because it was not "inextricably intertwined" with arbitrability).

[33] *Noble Cap. Fund Mgmt., L.L.C. v. U.S. Cap. Glob. Inv. Mgmt., L.L.C.*, 31 F.4th 333, 336–37 (5th Cir. 2022) (quoting *Thorton v. Gen. Motors Corp.*, 136 F.3d 450, 453 (5th Cir. 1998) (per curiam)).

No. 23-30826
c/w No. 23-30916

personal jurisdiction because it never ruled on Defendants' pending motions
to dismiss. Consequently, the doctrine of pendent appellate jurisdiction is
inapplicable because we are not being asked to review an otherwise
"unappealable order" that is "pendent" to the arbitration orders.

In sum, because the issue of personal jurisdiction is "fairly included"
in the appealable arbitration orders, we have appellate jurisdiction to consider
it on this interlocutory appeal.

## B.    Decisional Sequencing

Having assured ourselves that we have appellate jurisdiction to
consider the issue of personal jurisdiction, we turn to the question of whether
the district court was required to rule on Defendants' motions to dismiss for
lack of personal jurisdiction before resolving their motions to compel
arbitration.

As a threshold matter, we must determine whether Defendants
consented to the district court's exercise of personal jurisdiction. Plaintiffs
urge that the district court was free to address arbitrability before personal
jurisdiction because Defendants consented to the court's exercise of personal
jurisdiction for purposes of deciding their arbitration motions. Plaintiffs
reason that because Defendants moved to compel arbitration, they are
seeking "affirmative relief,"[34] and "when a party seeks affirmative relief
from a court, it normally submits itself to the jurisdiction of the court with
respect to the adjudication of claims arising from the same subject matter."[35]

---

[34] *See Midwest Mech. Contractors, Inc. v. Commonwealth Constr. Co.*, 801 F.2d 748,
752 (5th Cir. 1986) (recognizing that "a petition to compel arbitration under section 4 of
the Arbitration Act . . . affirmatively orders that someone do (or refrain from doing) some
act" (internal citation omitted)).

[35] *PaineWebber*, 260 F.3d at 460–61 (internal quotation marks and citation omitted).

No. 23-30826
c/w No. 23-30916

"This court has long held that a non-resident defendant may participate in litigation without submitting to the court's jurisdiction so long as it maintains its objection to personal jurisdiction."[36] In other words, a non-resident defendant may "simultaneously protest personal jurisdiction while vigorously advocating the merits of his case."[37] Additionally, "filing a counterclaim or third-party claim does not, without more, waive an objection to personal jurisdiction."[38]

Assuming without deciding that a motion to compel arbitration is a request for "affirmative relief," that request, by itself, is insufficient to consent to personal jurisdiction when a defendant has continuously objected to personal jurisdiction. Defendants frequently file simultaneous motions to dismiss for lack of personal jurisdiction and motions to compel arbitration, and courts routinely resolve the personal jurisdiction challenges first without any suggestion that defendants consented to jurisdiction for purposes of resolving arbitrability.[39] One exception to this practice is "[w]hen a party

---

[36] *Halliburton Energy Servs., Inc. v. Ironshore Specialty Ins.*, 921 F.3d 522, 540 (5th Cir. 2019).

[37] *Id.* (internal quotation marks and citation omitted).

[38] *Id.* (internal quotation marks and citation omitted).

[39] *See, e.g.*, *Gen. Elec. Co. v. Deutz AG*, 270 F.3d 144, 149–52 (3d Cir. 2001) (confirming that personal jurisdiction existed before evaluating arbitrability where the defendant "moved to dismiss for lack of personal jurisdiction or, alternatively, to compel international arbitration"); *Rodríguez-Rivera v. Allscripts Healthcare Sols., Inc.*, 43 F.4th 150, 167 (1st Cir. 2022) (concluding "that the district court could have exercised personal jurisdiction" before "turn[ing] to the next issue: whether the suit should not have been brought in a federal court because [the parties] . . . had an agreement to arbitrate disputes like this one"); *Pollock v. Protect My Car Admin Servs., Inc.*, No. H-23-1252, 2023 WL 6324366, at *1 (S.D. Tex. Sept. 28, 2023) (resolving the defendant's motion to compel arbitration and, alternatively, motion to dismiss for lack of personal jurisdiction by concluding that because the court lacked personal jurisdiction over the defendant, it would not address the motion to compel arbitration).

No. 23-30826
c/w No. 23-30916

agrees to arbitrate in a particular state, via explicit or implicit consent, the district courts of the agreed-upon state may exercise personal jurisdiction over the parties for the limited purpose of compelling arbitration."[40] But that exception is inapplicable here because Defendants did not agree to arbitrate in Louisiana.

At base, Defendants' litigation conduct is inconsistent with Plaintiffs' assertion that they consented to personal jurisdiction for the limited purpose of resolving their motions to compel arbitration. To the extent Defendants sought affirmative relief, they did so while simultaneously objecting to personal jurisdiction by filing Rule 12(b)(2) motions. In such situations, this Court has rejected the assertion that a defendant has submitted to the court's personal jurisdiction.[41]

Because Defendants did not consent to the district court's jurisdiction for purposes of compelling arbitration, we must determine whether the district court was required to assure itself that it had personal jurisdiction before moving on to address the question of arbitrability. The answer to this

---

[40] *Int'l Energy Ventures Mgmt.*, 818 F.3d at 212 (internal quotation marks and citation omitted); *Halliburton Energy Servs.*, 921 F.3d at 529, 541 (deciding to "address the arbitration question before turning to personal jurisdiction because . . . [the defendant] submitted to the court's personal jurisdiction for the limited purpose of compelling arbitration" by agreeing to arbitrate in Texas).

[41] *See, e.g.*, *Halliburton Energy Servs.*, 921 F.3d at 541 (concluding that the defendant did not waive its personal jurisdiction defense because it "continuously objected to the court's personal jurisdiction," even though "it did file a counterclaim"); *Cruson v. Jackson Nat'l Life Ins. Co.*, 954 F.3d 240, 251–52 (5th Cir. 2020) (holding that the district court abused its discretion in finding that the defendant waived its personal jurisdiction defense by filing a summary judgment motion because the defendant's "contemporaneous litigation conduct" reflected a continuing objection to personal jurisdiction); *PaineWebber*, 260 F.3d at 460–61 (rejecting the argument that the defendant "waived any objection to personal jurisdiction by seeking the 'affirmative relief' of a stay pending appeal and an injunction to prevent . . . [the plaintiff] from proceeding with arbitration" given that both motions were "*premised* on a jurisdictional objection").

No. 23-30826
c/w No. 23-30916

question depends on: (1) whether a motion to compel arbitration is a threshold non-merits ground for dismissal, and, if so, (2) whether the personal jurisdiction issue would have been "difficult to determine," and resolving the arbitrability issue would have been "the less burdensome course."[42] We address each question below.

It is axiomatic "that a federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)."[43] Both Supreme Court and Fifth Circuit precedent "recognize that, in some limited instances, 'a federal court has leeway to choose among threshold grounds for denying audience to a case on the merits.'"[44] Because a threshold issue "den[ies] audience to a case on the merits[,]"[45] it must "not entail any assumption by the court of substantive 'law-declaring power.'"[46] "The principle underlying these decisions . . . [is that jurisdiction] is vital only if the court proposes to issue a judgment on the merits."[47] As examples of threshold issues, the Supreme Court has approved of courts dismissing suits for lack of personal jurisdiction without first addressing subject-matter jurisdiction,[48] or granting *forum non conveniens*

---

[42] *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 436 (2007).

[43] *Id.* at 430–31 (citing *Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 93–102 (1998)).

[44] *Env't Conservation Org. v. City of Dallas*, 529 F.3d 519, 525 (5th Cir. 2008) (quoting *Sinochem*, 549 U.S. at 431).

[45] *Ruhrgas*, 526 U.S. at 585.

[46] *Sinochem*, 549 U.S. at 433 (quoting *Ruhrgas*, 526 U.S. at 584–85).

[47] *Id.* at 431 (internal quotation marks and citation omitted).

[48] *See Ruhrgas*, 526 U.S. at 588 ("Where, as here, however, a district court has before it a straightforward personal jurisdiction issue presenting no complex question of state law, and the alleged defect in subject-matter jurisdiction raises a difficult and novel

No. 23-30826
c/w No. 23-30916

dismissals before addressing other jurisdictional issues.[49]  The Court has also
recognized that a district court's decision not to exercise pendent jurisdiction
over state-law claims or to abstain under *Younger v. Harris*[50] are both
"threshold grounds for denying audience to a case on the merits."[51]

The parties here dispute whether denial of a motion to compel
arbitration qualifies as a threshold non-merits ground for dismissal.  Neither
this Court nor the Supreme Court has squarely addressed this question.  At
least one of our sister circuits—the Third Circuit—has concluded that a
motion to compel arbitration is a merits-based issue that cannot be addressed
before threshold disputes over venue and jurisdiction have been resolved.  In
*Reading Health System v. Bear Stearns & Co.*,[52] the Third Circuit reasoned
that unlike venue disputes, "resolving a dispute over arbitrability requires a
district court to apply its law-declaring power regarding the parties' right to
arbitrate."[53]

A district court's resolution of a motion to compel arbitration has little
in common with the above examples of threshold non-merits dismissals.
Most notably, as recognized by the Third Circuit, the resolution of a motion

---

question, the court does not abuse its discretion by turning directly to personal
jurisdiction.").

[49] *See Sinochem*, 549 U.S. at 436 ("If, however, a court can readily determine that
it lacks jurisdiction over the cause or the defendant, the proper course would be to dismiss
on that ground . . . [b]ut where subject-matter or personal jurisdiction is difficult to
determine, and *forum non conveniens* considerations weigh heavily in favor of dismissal, the
court properly takes the less burdensome course.").

[50] 401 U.S. 37 (1971).

[51] *Ruhrgas*, 526 U.S. at 585.

[52] 900 F.3d 87 (3d Cir. 2018).

[53] *Id.* at 95.

No. 23-30826
c/w No. 23-30916

to compel arbitration requires the court "to apply its law-declaring power."[54] Thus, unlike other threshold issues, a court cannot rule on arbitrability without subject-matter[55] and personal jurisdiction.[56]

Moreover, because the resolution of a motion to compel arbitration never results in dismissal, it cannot be a "non-merits ground for *dismissal*."[57] The Supreme Court recently held that the Federal Arbitration Act ("FAA") requires a court to stay, rather than dismiss, a lawsuit involving an arbitrable dispute.[58] The Court reasoned that "staying rather than dismissing a suit [subject to arbitration] comports with the supervisory role that the FAA envisions for the courts," given that the "FAA provides mechanisms for courts with proper jurisdiction to assist parties in arbitration."[59] The district court's retention of jurisdiction makes motions to compel arbitration readily distinguishable from previously recognized threshold non-merits grounds for denying an audience to a case on the merits.

Even if arbitrability were considered a threshold non-merits ground for dismissal, the district court still could not invoke the "leeway" afforded

---

[54] *Id.*

[55] *Lower Colo. River Auth. v. Papalote Creek II, L.L.C.*, 858 F.3d 916, 923 (5th Cir. 2017) ("[T]he district court must have jurisdiction in the first instance to compel arbitration . . . .").

[56] *See, e.g.*, *PaineWebber*, 260 F.3d at 464 ("As the district court lacked jurisdiction to enter its order compelling . . . arbitrat[ion] . . . , we vacate that order and remand with instructions to dismiss this case for lack of personal jurisdiction . . . .").

[57] *Sinochem*, 549 U.S. at 432 (emphasis added) (internal quotation marks and citation omitted).

[58] *Smith v. Spizzirri*, 144 S. Ct. 1173, 1178 (2024).

[59] *Id.* The Court further clarified that its holding did not preclude courts "from dismissing the suit if there is a separate reason to dismiss," if, for example, "the court lacks jurisdiction." *Id.* at 1176 n.2.

No. 23-30826
c/w No. 23-30916

by *Sinochem* unless the personal jurisdiction issue would have been "difficult to determine," and arbitrability was "the less burdensome course."[60]   The Court in *Sinochem* made clear that dismissal on non-jurisdictional threshold grounds is not appropriate when "a court can readily determine that it lacks jurisdiction over the cause or the defendant," given that considerations, such as judicial economy, "should impel the federal court" to resolve jurisdictional issues first.[61]

Here, Plaintiffs make the conclusory assertion that it was "prudential" for the district court to decide arbitration first because Defendants' motions to compel arbitration are "meritless."  But that is not the relevant inquiry.  Rather, as stated above, the question is whether the jurisdictional issue "would be difficult to determine," and whether arbitrability would be "less burdensome."   The district court did not determine that resolving personal jurisdiction would have been an arduous inquiry, nor do Plaintiffs argue that on appeal.  Furthermore, as explained by the Third Circuit, addressing jurisdiction first "promotes finality interests and judicial economy by ensuring the facial validity of any subsequent order compelling (or denying) arbitration."[62]   Accordingly, motions to compel arbitration are not one of the limited instances in which district courts have leeway to pretermit the resolution of jurisdictional challenges.

---

[60] *Sinochem*, 549 U.S. at 436.

[61] *Id.* at 436 (quoting *Ruhrgas*, 526 U.S. at 587–88); *Smith v. Edwards*, 88 F.4th 1119, 1125 (5th Cir. 2023) ("However, the leeway granted by *Sinochem* is not boundless, but carefully circumscribed to cases where [jurisdiction] is difficult to determine, and dismissal on another threshold ground is clear." (alteration in original) (internal quotation marks and citation omitted)).

[62] *Reading*, 900 F.3d at 95–96.

No. 23-30826
c/w No. 23-30916

## C.    Determination of Personal Jurisdiction

Because we conclude the district court erred by ruling on arbitrability before ensuring it had personal jurisdiction over Defendants, the only remaining question is whether this Court should address Defendants' personal jurisdiction challenge in the first instance, or whether we should remand the issue for the district court to address.  Defendants request that we consider whether the district court had personal jurisdiction in the first instance because it is a purely legal question, subject to *de novo* review, and resolving it now would be in the interests of judicial economy.  Alternatively, if we decide to remand the case, Defendants request that we retain jurisdiction and issue a limited remand for the district court to make findings about personal jurisdiction and standing.

"Given that the district court did not reach [personal jurisdiction] . . . , the normal course would be to remand for the district court to do so."[63] Following the "normal course" is justified here, not only on the basic principle that "we are 'a court of review, not of first view'"[64] but also given the interlocutory posture of this appeal,[65]  and the fact-intensive nature of

---

[63] *Montano v. Texas*, 867 F.3d 540, 546 (5th Cir. 2017).

[64] *Daves*, 22 F.4th at 548 (quoting *Cutter v. Wilkinson*, 544 U.S. 709, 718 n.7 (2005)).

[65] In cases involving interlocutory appeals where a jurisdictional challenge was not addressed by the district court, this Court has remanded for the district court to consider the jurisdictional issue in the first instance. *See, e.g.*, *Cruson*, 954 F.3d at 249 n.7, 252 (holding that the district court abused its discretion in holding that the defendant waived its personal jurisdiction defense but declining the defendant's "request to address the merits of its personal jurisdiction defense for the first time on appeal" of a class certification order); *Gaalla v. Brown*, 460 F. App'x 469, 481 (5th Cir. 2012) (unpublished) (refusing to address in the first instance arguments about the district court's lack of supplemental jurisdiction over state-law claims on interlocutory appeal and remanding the matter "[b]ecause the district court was not given the opportunity to consider . . . [the defendant]'s challenge to its jurisdiction in the first instance"); *Roman*, 669 F. App'x at

No. 23-30826
c/w No. 23-30916

personal jurisdiction inquiries.    Accordingly, we decline Defendants'
invitation to evaluate personal jurisdiction on this interlocutory appeal, and
we instead order a limited remand for the district court to consider the issue
in the first instance.

## III.    CONCLUSION

For the foregoing reasons, we VACATE and REMAND for the
limited purpose of allowing the district court to determine whether it has
personal jurisdiction and subject-matter jurisdiction over Defendants.  If the
court determines that it lacks either personal jurisdiction or subject-matter
jurisdiction (in light of *Murthy*), it must dismiss the case.  If the district court
concludes that it has both personal and subject-matter jurisdiction, the case
will be returned to this panel.

---

282 (vacating and remanding the district court's order denying arbitration "for a
determination of subject matter jurisdiction").