# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
November 24, 2026
Thomas B. Plunkett, III
Clerk

---

No. 23-30826

---

Jill Hines, *on behalf of herself & others similarly situated*; Jim Hoft, *on behalf of himself & others similarly situated*,

*Plaintiffs—Appellees*,

*versus*

Alex Stamos; Renee DiResta; Board of Trustees of the Leland Stanford Junior University; Leland Stanford Junior University; Kate Starbird, *in her official and individual capacities*; Graphika; Camille Francois; Atlantic Council; Graham Brookie,

*Defendants—Appellants*,

consolidated with

---

No. 23-30916

---

Jill Hines, *on behalf of herself and others similarly situated*; Jim Hoft, *on behalf of himself and other similarly situated*,

*Plaintiffs—Appellees*,

*versus*

Aspen Institute,

*Defendant—Appellant*,

CONSOLIDATED WITH

---

No. 26-30471

---

JILL HINES, *on behalf of herself & others similarly situated*,

*Plaintiff—Appellant*,

*versus*

ALEX STAMOS; RENEE DIRESTA; BOARD OF TRUSTEES OF THE LELAND STANFORD JUNIOR UNIVERSITY; LELAND STANFORD JUNIOR UNIVERSITY; KATE STARBIRD, *in her official and individual capacities*; GRAPHIKA; CAMILLE FRANCOIS; ATLANTIC COUNCIL; GRAHAM BROOKIE,

*Defendants—Appellees*.

---

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 3:23-CV-571

---

Before DAVIS, SOUTHWICK, and DUNCAN, *Circuit Judges*.

PER CURIAM:[*]

Jill Hines sued Stanford University, Alex Stamos, and others, alleging they conspired with the government to censor her online speech about COVID-19. The district court dismissed her suit without prejudice for lack of subject-matter and personal jurisdiction. Because Hines has not shown

---

[*] This opinion is not designated for publication. *See* 5TH CIR. R. 47.5.

that her injury is fairly traceable to Stanford or Stamos, she lacks standing. We therefore AFFIRM without reaching personal jurisdiction.

## I. BACKGROUND

This case is closely related to *Murthy v. Missouri*, which guides our resolution of this appeal.[1] In *Murthy*, Hines (along with others) sued federal officials and agencies, alleging the government censored her online speech against COVID-19 restrictions in violation of the First Amendment.[2] Here, Hines challenges Defendants' participation in an academic project named the Election Integrity Partnership (EIP). She alleges the EIP and its participants aided the government's scheme to have Facebook suppress her online speech, also in violation of the First Amendment.[3]

Facebook began moderating COVID-19 content early in the pandemic, deleting or demoting posts it deemed false.[4] In April 2020 alone, it labeled roughly 50 million pieces of content. That same month, Hines launched a grassroots campaign to challenge COVID-19 government restrictions and used Facebook to communicate with her supporters. She was aware of Facebook's moderation and took deliberate measures to circumvent it.

The EIP, a consortium of researchers and institutions, was formed in July 2020. It sought to identify misinformation about elections and voting. For about three months in 2020, it monitored elections-related content on social media. EIP participants sometimes recommended actions to social-

---

[1] *See Murthy v. Missouri*, 603 U.S. 43 (2024).

[2] *See id.* at 49–50.

[3] Our review is limited to Hines's claims against Stanford and Alex Stamos, the former director of the Stanford Internet Observatory, which was an EIP member.

[4] *See Murthy*, 603 U.S. at 50–51.

media platforms and logged their communications when they did. In most instances, the platforms took no detectable action on those recommendations.

## II. PROCEDURAL HISTORY

Defendants moved to compel arbitration, then moved to dismiss for lack of standing and personal jurisdiction under Rule 12(b)(1) and (2). The district court denied the motion to compel arbitration without reaching the Rule 12 motions, and Defendants appealed. We remanded "for the limited purpose of allowing the district court to determine whether it has personal jurisdiction and subject-matter jurisdiction over Defendants" to resolve the motion to compel.[5]

On remand, Hines requested and received jurisdictional discovery. She never asked the court for further discovery and was never denied any.

After discovery was closed, the parties re-briefed the jurisdictional issues with evidence and sworn declarations. On July 1, 2026, the district court ruled. It found no disputed facts and dismissed without prejudice because Hines lacked standing and the court lacked personal jurisdiction over Defendants. Hines timely appealed.

## III. STANDING

The motion at issue is a Rule 12(b)(1) factual attack on standing, with undisputed facts. We therefore review the district court's legal conclusions de novo and confirm the facts are not genuinely contested.[6] Hines bears the

---

[5] *Hines v. Stamos*, 111 F.4th 551, 566 (5th Cir. 2024).

[6] *See Superior MRI Servs., Inc. v. All. Healthcare Servs., Inc.*, 778 F.3d 502, 504 (5th Cir. 2015) (describing facial and factual attacks on standing); *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981).

burden of proving "'the existence of subject-matter jurisdiction by a preponderance of the evidence' and is 'obliged to submit facts through some evidentiary method to sustain h[er] burden of proof.'"[7] Where, as here, the parties have taken discovery, she "cannot rest on 'mere allegations,' but must instead point to factual evidence."[8]

To have standing, a "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision."[9] For the claims before us, the second inquiry—traceability of Hines's past injuries—is "the whole ball game."[10]

*Murthy* sets out the required threshold showing for traceability: a plaintiff must show that "a particular defendant pressured a particular platform to censor a particular topic *before* that platform suppressed a particular plaintiff's speech on that topic."[11] Even where all these elements "line up, the links must be evaluated in light of the platform's independent incentives to moderate content."[12]

---

[7] *Superior MRI Servs.*, 778 F.3d at 504 (quoting *Irwin v. Veterans Admin.*, 874 F.2d 1092, 1096 (5th Cir. 1989)).

[8] *Murthy*, 603 U.S. at 58 (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).

[9] *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016).

[10] *Murthy*, 603 U.S. at 59. Hines does not challenge the dismissal of her claims for prospective relief, so we address only her past injury. *See Hernandez v. Causey*, 124 F.4th 325, 335 (5th Cir. 2024). Regardless, there is no evidence that the conduct alleged in Hines's complaint is likely to recur or continue. *See Murthy*, 603 U.S. at 69. The EIP no longer exists, and its final report issued in 2021.

[11] *Murthy*, 603 U.S. at 61.

[12] *See id.* at 59–60, 68 n.8.

### A. Hines's Injury

There is one injury that Hines claims is traceable to Defendants: on September 9, 2020, Facebook removed a post from Hines's page that attached an article entitled *Masks Don't Work*. At the time, Facebook explained the post went "against our Community Standards." It also reduced distribution of Hines's page on COVID-19 restrictions for "repeated" violations of its standards on "**Inauthentic Behavior**" and for "repeated sharing of **false news**." Hines does not dispute that these restrictions fit Facebook's own content moderation, described in Part I.

### B. Traceability

Hines's traceability theory rests on an inference drawn from timing. On September 8, 2020, the EIP received a massive submission of over 200 webpages and social-media posts from the Democratic National Committee. Among those 200 webpages was a single post by Hines where she encouraged her followers to lobby their representatives to end the COVID-19 public-health emergency. In Hines's view, the one-day timing between the DNC's submission and Facebook's moderation of her page is evidence that EIP participants called Facebook's attention to her single post in the 200-webpage DNC submission.

We are not persuaded by her argument. Discovery revealed no communication between the EIP and Facebook about Hines, and Facebook did not remove or moderate the post that the EIP received.[13] A notation in

[13] Hines argues there *may* be evidence of Defendants' communications with Facebook in undiscovered Slack or Zoom messages. But Stanford produced "communications and other documents" mentioning Hines or her account, and Hines neither challenged that production nor moved to compel additional discovery, although the scheduling order allowed for that. The mere possibility of undiscovered communications that were not sought in the district court is not evidence.

the EIP's records even says Hines's COVID-19 posts were beyond the scope of the EIP's elections-oriented work. We conclude as a matter of law that timing alone is too attenuated to trace Hines's injury to Defendants.[14]

*Murthy* also requires us to consider Facebook's own incentives to moderate content.[15] Facebook gave its own reasons for acting when it removed Hines's post and demoted her page, and Hines does not dispute that that moderation aligned with Facebook's COVID-19 policies. We agree with the district court that there's no indication that Facebook, in moderating Hines's post, did anything other than follow its own moderation policy.

### C. Hines's procedural objection

Finally, citing *Williamson v. Tucker*, Hines argues the district court was barred from deciding the Rule 12(b)(1) motion because standing overlapped with the merits.[16] Hines's authorities limit a court's ability to resolve disputed facts that also determine the merits. They do not require that a standing decision be postponed where, as here, the underlying facts are undisputed and Hines's timing-based inference is unwarranted as a matter of law.[17]

---

[14] *Cf. United States v. Fitzharris*, 633 F.2d 416, 422 (5th Cir. 1980).

[15] *See McRorey v. Garland*, 99 F.4th 831, 839 (5th Cir. 2024) ("a third party's 'legitimate discretion' breaks the chain of constitutional causation." (quoting *Turaani v. Wray*, 988 F.3d 313, 317 (6th Cir. 2021))).

[16] 645 F.2d at 415.

[17] *See Pickett v. Tex. Tech Univ. Health Scis. Ctr.*, 37 F.4th 1013, 1029–30 (5th Cir. 2022) ("[T]here are limits to a district court's ability to resolve fact disputes on a Rule 12(b)(1) motion."); *Montez v. Dep't of Navy*, 392 F.3d 147, 151 (5th Cir. 2004) (holding that the district court "should not have resolved disputed facts dispositive of both subject matter jurisdiction and the merits of an FTCA claim on Rule 12(b)(1) motion."); *cf. Williamson*, 645 F.2d at 416, 429 (contrasting the fact-dependent joint-venture theory of a

## IV. CONCLUSION

We AFFIRM the judgment of the district court.

"security" with the conclusion, based on undisputed facts, that notes were not securities as a matter of law).